IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICKEY L. BRANCH,

        Petitioner,

  v.

JEFFREY THOMAS,

        Respondent.

Case No. 3:11-cv-01319-SI

OPINION AND ORDER

    RICKEY L. BRANCH
    BOP Reg. #29107-179
    P.O. Box 5000
    Sheridan, Oregon  97378-5000

        *Pro Se* Petitioner

    S. AMANDA MARSHALL
    United States Attorney
    RONALD K. SILVER
    Assistant United States Attorney
    1000 SW Third Avenue, Suite 600
    Portland, OR  97204-2902

        Attorneys for Respondent

1 - OPINION AND ORDER

SIMON, District Judge.

Petitioner, an inmate at Federal Correctional Institution, Sheridan, Oregon ("FCI Sheridan") brings this habeas action pursuant to 28 U.S.C. § 2241. He alleges BOP officials violated his due process rights in two prison disciplinary hearings that resulted in the loss of privileges and good-time credits. For the reasons that follow, the amended petition (#9) is DENIED.

## BACKGROUND

Petitioner is serving a 198-month term of imprisonment in federal custody following his conviction for possession of a firearm by a convicted felon and possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(c)(1)(A). On October 6, 2010, while housed in the Federal Correctional Complex, in Beaumont, Texas ("FCC Beaumont"), Petitioner received a disciplinary incident report (hereafter "Report #1"), charging him with violating Code 111A - Introduction of Drugs, Attempted; and Code 197 - Use of the Telephone to Further Criminal Activity. The charges arose following an investigation of Petitioner's telephone use, prompted by suspicious activity staff detected on June 18, 2010. (#21, Decl. at 2.)

While the investigation of Petitioner's phone use was underway, information gathered from monitoring his calls led staff to intervene when the son of a fellow inmate was dropped off at the prison to visit his father, Inmate Goins. (*Id.*, at 2.) T. Goins

2 - OPINION AND ORDER

Jr. admitted to being in possession of marijuana, and twenty-one packages were confiscated. (*Id.*, at 2-3.) Staff continued their investigation until October 5, 2010, when they issued Report #1. Petitioner received a copy of Report #1 on October 6, 2010. (*Id.*) The report included details of suspicious activity that staff noted while monitoring Petitioner's telephone calls, for example, talking in "code" and discussing transportation to the prison for Goins Jr. in conversations with Shamika Laflue. (*Id.*, Attach. 1.)

Petitioner appeared before the Unit Discipline Committee ("UDC") on October 7, 2010. The UDC referred the matter to a Discipline Hearing Officer ("DHO") for a hearing. Petitioner appeared before DHO Weston on April 14, 2011. At the hearing, Petitioner denied the charges, but admitted to knowing the Goins' family and Shamika Laflue. Petitioner did not present witnesses or evidence, although he had the opportunity to do so. Petitioner did not ask to review the investigative report and waived his right to have a staff representative present. (*Id.*, at 3.)

DHO Weston found the greater weight of the evidence supported a finding that Petitioner committed the prohibited acts. In making this finding, he took into account that Petitioner steadfastly denied involvement with the drug smuggling; that Petitioner had arranged transportation to the prison for Goins Jr.; that Petitioner "spoke in code, kept referring to a 'mission', and referred to himself as a drug dealer" in his phone calls; that Petitioner and inmate Goins and their families were from the same

3 - OPINION AND ORDER

city and knew each other. (*Id.*, Attach. 2.) DHO Weston also took into account a written SIS report of the investigation into Petitioner's phone calls, and that Petitioner provided no credible evidence to refute the evidence against him.[1] (*Id.*) Petitioner was sanctioned with the loss of 41 days good-conduct time, forfeiture of 100-days non-vested good-conduct time, 60 days of disciplinary segregation, a disciplinary transfer, and loss of telephone and visiting privileges for three years. (*Id.*, Attach. 2.)

Petitioner was designated to FCI Sheridan on July 27, 2011. On September 22, 2011, an investigation concluded Petitioner had misused the inmate phone system. (#20, at 3.) On September 23, 2011, Petitioner received an incident report (hereafter, "Report #2") charging him with "refusing an order of the disciplinary hearing officer, use of the telephone for abuses." (#20, at 3; Attach. 4.) Report #2 alleged Petitioner had used the telephone 33 times to call a number in Texas, while on phone restriction, by using another inmate's personal access code ("PAC"). (*Id.*; Attach. 5.)

Petitioner appeared before DHO Cortez on October 18, 2011. Petitioner denied using Inmate Frazer's PAC, but explained that Frazer had known his family for over 20 years. (*Id.*) Petitioner

---

[1] "SIS"- Special Investigative Supervisor. *See* BOP P.S. 5264.07 (1/31/2002) Telephone Regulations for Inmates at p 8.

4 - OPINION AND ORDER

presented no evidence in his defense, requested no witnesses, and declined a staff representative. (*Id.*)

DHO Cortez found Petitioner violated Code 297 (Use of the Telephone for Abuses Other Than Criminal Activity). In making this finding, DHO Cortez took into consideration Petitioner's denials and explanations for Frazer making calls to his family. (*Id.*, at 3.) He also reviewed the SIS investigation; personally listened to and compared the recorded calls to Petitioner's family in Texas with calls to Frazer's family in California, noting differences in the inmate's voice on the calls to Texas and the calls to California; noted the use of Petitioner's nick-name during the calls to Texas; and, using inmate contact list information, confirmed Petitioner's family lived in Texas and Frazer's family lived in California. (*Id.*, Attach. 5.) DHO Cortez concluded a greater weight of the evidence supported finding Petitioner had misused the telephone. (*Id.*, at 3.) He sanctioned Petitioner with loss of 27 days good-conduct time; 1 year loss of telephone privileges; 6 months loss of e-mail privileges, and 6 months loss of 3-mail privileges, suspended pending 180 days of clear conduct. (*Id.*)

Petitioner appealed DHO Weston's determination through two of the three available levels of administrative remedies. (#22, Decl. at 3.) His appeal to the Regional Director was denied, and he attempted to submit an appeal to the Central Office but the appeal was rejected twice due to improper formatting. Petitioner was

5 - OPINION AND ORDER

given time to resubmit the Central Office appeal, but BOP records do not show that he did. (*Id.*) Petitioner did not appeal DHO Cortez's determination. (*Id.*)

## DISCUSSION

In his petition for relief, Petitioner argues that there is no "proof" he engaged in the prohibited conduct for which he has been sanctioned; that he was not allowed to see the actual SIS reports; and that DHO Cortez disregarded Inmate Frazer accepting full responsibility for making the calls to Petitioner's family. (#9.) In his Reply to the government's Response, Petitioner further argues the BOP failed to give him the 2010 incident report within 24 hours of the incident, in violation of BOP policy. (#30, at 1.) Overall, Petitioner contends his rights to due process were violated and asks that the two incident reports be expunged; that the sanctions imposed be reversed; and that good-time credits be restored.

Respondent argues Petitioner failed to exhaust his administrative remedies, and thus is not entitled to review of his claims. (#19.) Respondent also argues Petitioner is not entitled to relief on the merits because the disciplinary hearings he received satisfied the due process requirements for such hearings, as outlined by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Moreover, the DHOs' findings were supported with "some evidence," the standard for reviewing prison disciplinary hearings

6 - OPINION AND ORDER

under *Superintendent, Mass. Correctional Inst. v. Hill,* 472 U.S. 445, 454-55 (1985).

I.  Exhaustion of Administrative Remedies

Although exhaustion of administrative remedies is not an express jurisdictional requirement under 28 U.S.C. § 2241, federal prisoners must exhaust their administrative remedies "as a prudential matter" prior to seeking habeas relief. *See Laing v. Ashcroft,* 370 F.3d 994, 997 (9th Cir. 2004); *Castro-Cortez v.INS,* 239 F.3d 1037, 1047 (9th Cir. 2001); *c.f. Hicks v. Hood,* 203 F.Supp.2d 379, 382 (D.Or.2002) (the exhaustion requirement of the Prison Litigation Reform Act ("PLRA") does not expressly apply to petitions filed under § 2241). A court may waive the exhaustion requirement if pursuing administrative remedies would be futile. *Fraley v. U.S. Bureau of Prisons,* 1 F.3d 924, 925 (9th Cir.1993).

Respondent asserts exhaustion as a grounds for dismissal. A review of the BOP's Administrative Remedy Logs shows Petitioner pursued two of three available administrative remedies related to the first disciplinary report, but did not pursue any administrative remedies for the second (#22.) The Court, therefore, concludes Petitioner failed to exhaust his available administrative remedies. And there is no basis in the record for the Court to find doing so would be futile.

Ordinarily, Petitioner's failure to exhaust administrative remedies would result in the petition being denied without prejudice. However, for the reasons discussed below, the Court

7 - OPINION AND ORDER

dismisses the petition with prejudice because the claims presented are without merit.

II. Due Process

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, some measure of process is required. In *Wolff*, the Supreme Court established three elements of due process that are required of prison officials in disciplinary hearings: (1) provide advance written notice of the disciplinary violation; (2) provide a written statement by a fact-finder as to the evidence relied upon and the reasons for disciplinary action; and (3) allow the charged inmate an opportunity to call witnesses and present documentary evidence in his defense when allowing him to do so "will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 563-66 (1974). The nature of prison operations necessitates that prison officials be afforded flexibility with respect to inmate requests for witnesses and evidence, and because "[c]onfrontation and cross-examination present greater hazards to institutional interests[,]" they are not required elements for prison disciplinary hearings. *Id.* at 566-69.

A. Notice Requirement

Petitioner argues that, pursuant to 28 C.F.R. § 541.15(a) [sic], he should have received notice of the first disciplinary infraction within 24 hours of his June 18, 2010, telephone call,

8 - OPINION AND ORDER

and that the BOP violated governing regulations because he did not receive Report #1 until October 6th, 2010. (#30.) In essence, Petitioner is arguing that the suspicions raised by his June 18, 2010, phone call started the 24 hour notice clock. The Court finds this argument unavailing.

The governing regulation specifies, in relevant part:

§ 541.5 **Discipline process**.
(a) Incident report. The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will *issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.*

28 C.F.R. § 541.5 (emphasis added). The regulation provides that the report will describe the prohibited acts with which the inmate is being charged, and that the report will *ordinarily* be provided within 24 hours. Inclusion of "ordinarily" as a modifier for "provided within 24 hours" provides a flexibility that is essential in the prison context, where investigation of suspicious activity may be required to define the scope of the activity and to identify all participants.

Furthermore, staff must witness or *reasonably believe* prohibited conduct occurred before charging an inmate. 28 C.F.R. 541.5(a). Staff cannot be expected to provide notice of charges prior to establishing the nature and extent of the conduct, particularly when the charges may be based on cumulative conduct over a period of time.

9 - OPINION AND ORDER

The function of providing advanced written notice of an alleged violation is to inform the inmate of the charges and enable the inmate to prepare a defense. *Wolff*, 418 U.S. at 563-64. That function was fully satisfied when Petitioner received Report #1 within 24 hours of the report being issued, after the investigation of his conduct was completed. In addition to conveying the charges, Report #1 provides specific details of the activities that form the basis for those charges. (#9, Ex. A.) Petitioner's claim that his due process rights were violated because he did not receive Report #1 until October 6, 2010, is without merit.

B.  Sufficiency of the Evidence

Petitioner is understood to argue that there was insufficient evidence on which to find that he engaged in the prohibited conduct charged in Report #1 and Report #2. Petitioner is, in essence, challenging the standard of proof used in the DHO hearings. Petitioner also argues that he was not given access to the SIS reports generated from monitoring his telephone use. For the reasons that follow, the Court does not find Petitioner's arguments persuasive.

In *Superintendent v. Hill*, 472 U.S. 445 (1985), the Supreme Court held that a habeas court reviewing a prison disciplinary hearing cannot substitute its view of the facts for the determinations made in the disciplinary hearing, but that there must be "some evidence" supporting the disciplinary determination to satisfy due process. 472 U.S. at 454-456. "This standard is

10 - OPINION AND ORDER

met if there was some evidence from which the conclusion of the administrative tribunal could be deduced...." *Id.* at 455 (internal quotation and citation omitted). The reviewing court is not required to examine the entire record, independently assess the credibility of witnesses, or weigh the evidence to determine whether the evidence standard is met. *Id.* at 455. Rather, the court's review is to ascertain whether there is any evidence in the record that supports the conclusion made by the DHO. *Id.*

The standards of proof applicable to federal DHO hearings are found in BOP regulations, and specify, in relevant part:

> (f) Evidence and witnesses. You are entitled to make a statement and present documentary evidence to the DHO on your own behalf. *The DHO will consider all evidence presented during the hearing. The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.* Witnesses may appear at the DHO's hearing as follows:
> (1) Witnesses may appear before the DHO either in person or electronically (for example, by video or telephone conferencing) at the DHO's discretion.
> (2) The DHO will call witnesses who have information directly relevant to the charge(s) and who are reasonably available. However, the DHO need not call witnesses adverse to you if their testimony is adequately summarized in the incident report or other investigation materials.
> (3) You or your staff representative may request witnesses appear at the hearing to testify on your behalf. Your requested witnesses may not appear if, in the DHO's discretion, they are not reasonably available, their presence at the hearing would jeopardize institution security, or they would present repetitive evidence.
> (4) If your requested witnesses are unavailable to appear, written statements can be requested by either the DHO or staff representative. The written statements can then be considered during the DHO's hearing.
> (5) Only the DHO may directly question witnesses at the DHO's hearing. Any questions by you or your staff

11 - OPINION AND ORDER

> representative must be submitted to the DHO, who will present the question to the witness in his/her discretion.
> (6) The DHO may consider evidence provided by a confidential informant (CI) that the DHO finds reliable. You will not be informed of the CI's identity. You will be informed of the CI's testimony to the extent it will not jeopardize institution security, at the DHO's discretion.

28 CFR §541.8 (emphasis added).

As detailed in the background section above, both DHO Weston and DHO Cortez weighed Petitioner's denials of his involvement in the prohibited conduct against the evidence gathered during the investigations of his use of the prison telephone systems. In their respective hearings, both concluded the weight of the evidence supported finding Petitioner had engaged in prohibited conduct as charged. (#21, Attach. 2; #20, Attach 5.) In reviewing the incident reports and the DHO Reports, the Court finds there is "some evidence" to support the conclusion by DHO Weston and the conclusion by DHO Cortez that Petitioner engaged in prohibited conduct. Accordingly, the requirements for due process were satisfied in both disciplinary proceedings, and habeas relief is not warranted.[2]

/ / /

/ / /

---

[2] Given the important security considerations inherent to managing penal institutions, Petitioner's argument that he was entitled to see the actual SIS reports of his telephone use is rejected. The incident reports he received provided sufficient detail of the conduct leading to the charges to satisfy notice requirements.

12 - OPINION AND ORDER

## CONCLUSION

For the reasons stated above, the Court finds Petitioner's due process rights were not infringed in the two disciplinary hearings at issue. Accordingly, the Petition for Writ of Habeas Corpus (#1) is DENIED, with prejudice.

The court declines to issue a Certificate of Appealability on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 15th day of November, 2012.

Michael H. Simon
United States District Judge

13 - OPINION AND ORDER